Edwin C. **MANZER**, Plaintiff–Appellant,

v.

**DIAMOND SHAMROCK CHEMICALS COMPANY, formerly Diamond Shamrock Corporation; Occidental Chemical Corporation; Arch Mineral; Maxus Energy Corporation, Defendants–Appellees.**

No. 93–5513.

United States Court of Appeals, Sixth Circuit.

Argued May 9, 1994.

Decided July 20, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 22, 1994.

William C. Jacobs (argued and briefed), Catherine M. Stevens (briefed), Lexington, KY, for Edwin C. Manzer.

Richard C. Ward, Joseph H. Terry, Debra H. Dawahare (argued and briefed), Wyatt, Tarrant & Combs, Lexington, KY, for Diamond Shamrock Chemicals Co.

Debra H. Dawahare, Wyatt, Tarrant & Combs, Lexington, KY, for Occidental Chemical Corp., Arch Mineral.

Debra H. Dawahare, Wyatt, Tarrant & Combs, Lexington, KY, Edward H. Stopher, James P. Grohmann, Boehl, Stopher & Graves, Louisville, KY, for Maxus Energy Corp.

Before: BOGGS, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Manzer sued his former employer, Diamond Shamrock, in Kentucky state court on state-law age discrimination grounds. Diamond Shamrock removed the case to federal court on diversity grounds and, upon removal, Manzer amended his complaint to allege a violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (ADEA). The case was tried to a jury and, at the close of all the evidence, the district court granted Diamond Shamrock's motion for a directed verdict.[1] Because Manzer failed to produce sufficient evidence from which a jury could conclude that Diamond Shamrock's nondis-

---

1. In an unpublished opinion, a panel of this court vacated an earlier summary judgment in favor of Diamond Shamrock in this case, without reaching the merits, holding that "it was an abuse of discretion to grant summary judgment on the age discrimination claims simultaneously with the denial of the related discovery motions which had been pending for nearly three years." *Manzer v. Diamond Shamrock,* 907 F.2d 151 (1990 WL 92630 at **5).

criminatory explanations were pretextual, we **AFFIRM.**

## I.

■ We review a directed verdict *de novo. King v. Love,* 766 F.2d 962, 969 (6th Cir.), *cert. denied,* 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985). Thus, we "must view the evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *Danielson v. City of Lorain,* 938 F.2d 681, 683 (6th Cir.1991). Where no reasonable juror could find for the nonmoving party, a directed verdict is appropriate. *Fite v. First Tennessee Prod. Credit Assoc.,* 861 F.2d 884, 889 (6th Cir.1988).

### A. Direct Evidence

■ An ADEA plaintiff's case is submissible if it presents direct evidence that the defendant fired the plaintiff because of his age. In such cases, provided that the jury believes plaintiff's evidence, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by age discrimination. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244–45, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989) (plurality opinion). Manzer contends that he presented direct evidence of age discrimination and, therefore, the burden of persuasion should have shifted to Diamond Shamrock.

■ On cross-examination, Manzer elicited the following testimony from John McConnell, Manzer's supervisor at the time Manzer was fired:

Q. Had Edwin Manzer been 55 [years old], you wouldn't have had to terminate him, would you?

A. If Ed Manzer had been 55, he would have been offered the same program, I presume, of voluntarily [sic] retirement, early retirement. I presume he would have been included in that group, if he had been 55.

**2.** In an age discrimination context, this court has held that a prima facie case has been shown where the plaintiff was replaced by someone younger, even though that person may still be

This is not direct evidence of age discrimination. It is merely a statement of fact that, had Manzer been older, he would have qualified for the same benefits as others. The relevance of this statement to Manzer's case, if any, is provided by inference. Manzer would have the jury infer from the "timing" of his termination that not only was age the motivating factor in terminating him but also that his imminent qualification for additional benefits forced the company to terminate him before he got any older. Because this evidence is, at most, circumstantial evidence of discrimination, *Price Waterhouse* is not applicable.

### B. Circumstantial Evidence

■ Even without direct evidence of age discrimination, an ADEA plaintiff may still make a submissible case by presenting evidence from which the jury may infer an invidious intent behind plaintiff's termination. The process by which the sufficiency of such a case is tested was first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

#### 1. Prima facie case

■ In this paradigm, the plaintiff must first establish a prima facie case of discrimination by introducing evidence sufficient to support a finding that (1) plaintiff was a member of the protected class, (2) plaintiff suffered an adverse employment action, (3) plaintiff was qualified for the position either lost or not gained, and (4) a person not of the protected class replaced, or was selected over, the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824 (Title VII claim); *Gagne v. Northwestern Nat. Ins. Co.,* 881 F.2d 309, 313 (6th Cir.1989) (ADEA claim).[2] This proof "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094.

within the protected class of persons age 40–and–over. *See Barnes v. GenCorp. Inc.,* 896 F.2d 1457, 1466 (6th Cir.1990).

■ It is admitted, here, that Manzer adduced sufficient evidence from which a reasonable juror could conclude all of the elements of his prima facie case. Manzer was fifty-five years old when he was fired from his position as Comptroller of Diamond Shamrock's Coal Unit division. He was replaced by Ralph Turner, who was then thirty-three years old. Although Diamond Shamrock disputed that Manzer was "qualified" to continue serving as comptroller at the time he was fired, the district court denied Diamond Shamrock's motion for a directed verdict at the close of Manzer's case on the ground that Manzer's evidence had created a jury question on that issue. Additionally, in granting the subsequent directed motion under review here, the district court specifically found that Manzer's proof on this issue created a jury question.

### 2. Defendant's burden

■ Once the plaintiff has made a prima facie case, the burden shifts to the defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. The Court emphasized that this burden was merely one of "production" because "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093.

■ Here, Diamond Shamrock introduced evidence of two age-neutral bases for its decision to fire Manzer: (1) Manzer was argumentative and confrontational with superiors and co-workers, and (2) Manzer's work product was, on occasion, inaccurate. More to the point, counsel for Diamond Shamrock stated that Manzer was fired because he was "obnoxious and unreliable." These nondiscriminatory explanations for Diamond Shamrock's actions "destroy[ ] the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10.

### 3. Plaintiff's rebuttal

■ In *Burdine*, the Supreme Court noted that the employer's explanations serve to "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate *pretext*." *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1095 (emphasis added). Pretext may be shown "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095.

Prior to 1993, a majority of courts held that a plaintiff was required to make both the "direct" *and* the "indirect" showings discussed in *Burdine*. Thus, these courts required that "an ADEA plaintiff must do more than simply refute or cast doubt on the company's rationale for the adverse action. The plaintiff must *also* show a discriminatory animus based on age." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990) (emphasis added). These courts have been dubbed "pretext plus" circuits. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1123–24 (7th Cir.1994) (compiling cases).

A minority of courts, dubbed "pretext only" circuits, reached a dramatically different conclusion. These held that, not only did the plaintiff's prima facie evidence still provide a basis for *inferring* discrimination, such an inference was *required* once plaintiff showed that the employer's explanation was not credible. Thus, a finding that the employer's explanation was not credible was held to be "*equivalent*" to a finding that the employer intentionally discriminated." *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1396 (3d Cir.), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984).

The Sixth Circuit sided distinctly with the "pretext plus" circuits. In *Gagne*, this court stated:

> To meet [her rebuttal] standard, [plaintiff] was required to produce direct, indirect or circumstantial evidence that her age was a factor in the decision to terminate her and

that "but for" this factor she would not have been terminated.

*Gagne,* 881 F.2d at 314. This court went on to say that, " '[i]ndeed, the *inference* of discrimination created by the prima facie case is *dispelled* once the employer's reason is stated, until and unless the latter is shown to be a pretext.' " *Id. (quoting Menard v. First Security Serv. Corp.,* 848 F.2d 281, 287 (1st Cir.1988) (emphasis added).

Recently, the Supreme Court rejected the "pretext only" position and held that a mere finding that the reasons given by the employer "were not the real reasons" for firing plaintiff did not *compel* judgment for the plaintiff. *St. Mary's Honor Center v. Hicks,* — U.S. —, — —, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993). The Court, however, *also* rejected the "pretext plus" position, stating:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals [for the Eighth Circuit] was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is *required.* '

*Id.* at —, 113 S.Ct. at 2749 (citation and footnote omitted) (emphasis in the original). The Court summarized its holding by saying that "[e]ven though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*" *Id.* at — n. 4, 113 S.Ct. at 2749 n. 4 (emphasis in the original).

■ Thus, *Hicks* clarified that the only effect of the employer's nondiscriminatory explanation is to convert the inference of discrimination based upon the plaintiff's prima facie case from a mandatory one which the jury *must* draw, to a permissive one the jury *may* draw, *provided* that the jury finds the employer's explanation "unworthy" of belief.

The jury may not reject an employer's explanation, however, unless there is a sufficient basis *in the evidence* for doing so. To allow the jury simply to refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 ("defendant need not persuade the [trier of fact] that it was actually motivated by the proffered reasons"); *Hicks,* — U.S. at —, 113 S.Ct. at 2747 ("ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff").

■ Accordingly, once the employer has come forward with a nondiscriminatory reason for firing the plaintiff, we hold that the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation. *See Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1109 (8th Cir.1994) ("if (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred").[3]

---

**3.** Every circuit court to address the impact of *Hicks* on the submissibility of employment discrimination cases has reached this same conclusion. *See Washington v. Garrett,* 10 F.3d 1421, 1433 (9th Cir.1994) ("as [*Hicks* ] recognizes, ... there will always be a question for the factfinder once plaintiff establishes a prima facie case *and* raises a *genuine issue* as to whether the employer's explanation for its action is true"); *Baxter Healthcare,* 13 F.3d at 1124 (to make a submissible case, plaintiff "must only produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons for

his dismissal) (internal quotation marks omitted); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 843 (1st Cir.1993) (plaintiff's case was not submissible because the "jury would lack any rational basis from this evidence to conclude that [defendant's] assertions of financial concern, as a basis for the discharges, were a sham"), *cert. denied,* — U.S. —, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). *Cf. Cabrera v. Jakabovitz,* 24 F.3d 372, 385 (2nd Cir.1994) ("[plaintiff] did not fail to offer sufficient evidence of discrimination by not presenting more evidence after [defendant] endeavored to provide a nondiscriminatory

■ To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are "factually false." *Baxter Healthcare*, 13 F.3d at 1123–24. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.

■ The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes

reason for his actions" where other evidence in the record support jury's finding that explanation

it "more likely than not" that the employer's explanation is a pretext, or coverup.

If the bare bones elements of a plaintiff's prima facie case were sufficient to make this showing, however, the entire "burden shifting" analysis of *McDonnell Douglas* and its successors would be illusory. No case could ever be culled out after the prima facie stage and every case would have to be determined by a jury. We do not believe that this was the intent of Congress or the outcome envisioned by the Supreme Court in its long line of cases implementing employment discrimination legislation. Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination.

## C.

■ In the present case, Manzer contends that the same evidence which created a jury question on his prima facie element of "qualification" was also sufficient to permit a reasonable juror to reject Diamond Shamrock's proffered explanations as "phony". The district court held, and Manzer does not dispute, that he presented no evidence that his employer's explanations were "factually false." Nor did Manzer introduce any evidence that other, but younger, employees were not fired even though they were just as "obnoxious and unreliable" as he. Therefore, the sufficiency of Manzer's rebuttal must be evaluated in terms of the second showing discussed above, *i.e.* that the strength of his circumstantial evidence of age discrimination overwhelms, or at least would permit a reasonable juror to conclude that it overwhelms, Diamond Shamrock's non-discriminatory reasons.

The central theme of Manzer's argument is that, because he continued to receive good performance evaluations and merit pay increases even after the incidents which Diamond Shamrock cited as illustrative of his inaccuracy and combative attitude, those explanations must be incredible. This argu-

was "unbelievable").

ment is misdirected. The issue is not whether Manzer was truly "obnoxious" enough, or "unreliable" enough, to justify firing him. Nor are we concerned with why Diamond Shamrock retained Manzer as long as it did. Those are precisely the type of "just cause" arguments which must not be allowed to creep into an employment discrimination lawsuit. Diamond Shamrock asserts that these are the reasons Manzer was fired and, in the absence of one of the three showings discussed above, its explanations must be accepted.[4]

We do not find any evidence, other than that which established his four prima facie elements, that age played any part in Manzer's termination. The evaluation Manzer received from McConnell, who ultimately fired him, rated Manzer "good," but not "promotable." As such, it was hardly the ringing affirmation that Manzer now contends it was, particularly in light of McConnell's testimony that he was trying to "get along" with Manzer given the short time that they had worked together. Nor was Manzer's "merit" pay increase particularly noteworthy in light of the evidence that such raises were given almost universally. Finally, Manzer's invitation to participate in the company's profit sharing plan, apparently, was extended by Diamond Shamrock officers in the Dallas office, who did not have to work with him on a day-to-day basis.

The relevance of these facts and Manzer's "timing" argument is limited to establishing Manzer's prima facie element of "qualification." They have no independent probative value on the issue of illegal discrimination. Indeed, the only facts which separate Manzer's case from the garden-variety termi-

nation of an "at will" employee are that he was over forty years old when he was fired and that he was replaced by someone under forty years old. While these elements, together with the element of "qualification," may be sufficient to force Diamond Shamrock to come forward with a nondiscriminatory reason for having fired him, they are not sufficient, by themselves, to permit a factfinder to conclude that the reasons proffered by Diamond Shamrock were a pretext for age discrimination.

Accordingly, because we hold that a plaintiff must introduce some evidence of age discrimination other than his prima facie case where there is no evidence which directly challenges the credibility of his employer's proffered explanations, we hold that the district court did not err in granting Diamond Shamrock's motion for a directed verdict at the close of all the evidence.

## II.

 Manzer's remaining three arguments allege reversible error in the course of the trial. We have reviewed these claims and find no cause for reversal. The district court was well within its discretion in admitting testimony concerning inaccuracies in Manzer's work, even though no physical copies of those records were produced. See Fed.R.Evid. 1004(1) and (4). Nor was evidence of Manzer's "bad attitude" at work inadmissible evidence of prior bad acts as Manzer asserts. Finally, Manzer's failure to police his own invocation of "the rule" regarding witnesses, and the absence of any plain error by the district court as to this

4. *Fite v. First Tennessee Prod. Credit Assoc.*, 861 F.2d 884 (6th Cir.1988), although cited by neither party, *is illustrative. In Fite, the plaintiff's* rebuttal consisted, in part, of showing that he had received good work evaluations and merit pay increases up until the time he was "retired." *Id.* at 890. Unlike the present case, however, the executive who fired the plaintiff in *Fite* admitted that he "knew nothing about [plaintiff's] job performance." *Id.* at 888. The court also noted that the specific claim of poor performance made by the employer, *i.e.,* that the plaintiff had "mismanaged" a large account portfolio, was actually contradicted by defendant's own evidence. *Id.* at

890–91. Finally, defendant's own evidence showed that the plaintiff had been given a heavier workload, more responsibility and, in fact, had "moved ... up the chain of command" shortly before the company "retired" him. *Id.* at 891. The cumulative impact of this evidence, the court held, would permit a reasonable juror to conclude that the defendant's proffered explanations were pretextual. *Id.* As we view *Fite*, it is nothing more than an ordinary example of a successful showing of the first type discussed above, *i.e.,* that the defendant's nondiscriminatory reasons lacked a basis in fact. As noted, Manzer did not even attempt to make such a showing.

issue, dispose of his final point.[5]

### III.

For the reasons stated above, we **AF-FIRM** the district court's decision to grant Diamond Shamrock's motion for a directed verdict.

---

**5.** Because we hold that Manzer did not present a submissible case against any defendant, we need not consider his argument that the district court improperly dismissed defendant Maxus Energy Corporation prior to trial.