**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0136n.06

**No. 09-5596**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED
Mar 03, 2010
LEONARD GREEN, Clerk**

| | | |
|---|---|---|
| **DOROTHY A. BURDETTE**, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| **FEDERAL EXPRESS CORPORATION**, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant-Appellee*. | ) | **O P I N I O N** |
| | ) | |
| | ) | |
| | ) | |

**BEFORE:** **MERRITT, COLE, and COOK, Circuit Judges.**

**COLE, Circuit Judge.** Plaintiff-Appellant Dorothy A. Burdette filed suit against her former

employer, Federal Express Corporation ("FedEx"), alleging four causes of action: (1) that FedEx

discriminated against her on the basis of her religion in violation of Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.; (2) that FedEx retaliated against her for

complaining about religious discrimination in violation of Title VII; (3) that FedEx discriminated

against her because of her beliefs in violation of the Tennessee Human Rights Act ("THRA"), Tenn.

Code Ann. § 4-21-101(a)(1); and (4) that FedEx interfered and retaliated against her for taking

medical leave in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

Although not specifically pleaded, Burdette also alleged that FedEx failed to reasonably

accommodate her religious beliefs and failed to remedy harassment against her from her supervisors

in violation of Title VII and the THRA. Both FedEx and Burdette filed motions for summary judgment. The district court denied Burdette's motion and granted FedEx's, resulting in this appeal. We **AFFIRM**.

## I. Background

Burdette began working for FedEx in 1991 as a cargo handler in FedEx's hub facility at the Memphis International Airport. In 1999, FedEx promoted her to a Grade Level 25 manager. In 2000 or 2001 Burdette became a Seventh Day Adventist. At that time, she made it known to her superiors at FedEx that her religious beliefs prevented her from working on her Sabbath, which is observed from sundown on Friday until sundown on Saturday.

In 2004, Burdette accepted a promotion to the position of Grade Level 26 operations manager. Unlike Grade Level 25 managers, Grade Level 26 operations managers are responsible for loading and launching aircraft. As an operations manager, Burdette supervised twenty to thirty employees, and she reported to a senior manager, who had five to eight operations managers who reported to him. If an operations manager did not report to work, another operations manager had to supervise the absent manager's employees, in addition to her own employees. Further, the manager covering for the absent manager might have to cover an operations center located blocks away from her own because operations are located in different buildings.

After her promotion to operations manager, Burdette began complaining of religious harassment. In October of 2005, she claimed that a co-worker, Joe Cannon, made comments to her about her need not to work on Saturdays. FedEx gave her an opportunity to file an internal complaint, but she declined. FedEx, however, investigated and concluded that there was no

harassment or policy violation.

Shortly thereafter, in February of 2006, Burdette' first incident of discipline occurred. The FedEx employees whom she supervised complained about her, alleging that she instructed them to falsify their time cards, that she physically touched them, and that she verbally demeaned them. These complaints resulted in a warning letter from her supervisor. Burdette appealed the warning letter through FedEx's internal process, and the warning letter was upheld. Because of the complaints from the employees reporting to her, she was transferred to another workgroup under senior manager Gautam Malhotra.

On April 5, 2006—shortly after her first incident of discipline—Burdette filed an internal Equal Employment Opportunity ("EEO") complaint. She alleged that she had been discriminated against and harassed by her supervisors and co-workers. The only specific mention of religion in this complaint was a reference to the fact that she had previously complained about Joe Cannon's comments regarding her need not to work on Saturdays.

Burdette's second incident of discipline occurred four months later in August of 2006 after she permitted an unqualified employee onto an aircraft, and, in violation of company policy, the employee used a crowbar inside the aircraft. The crowbar slipped and punched a hole in the interior of the aircraft. In response, FedEx issued Burdette a performance reminder, a form of discipline. Again, Burdette unsuccessfully appealed.

On August 15, 2006, Burdette's senior manager at that time, Malhotra, requested that Burdette work two consecutive Saturdays: August 26, 2006, and September 2, 2006 due to a shortage of operations managers. The next day, Burdette filed another internal EEO complaint challenging

Malhotra's request that she work on those days. While the matter was being investigated, she temporarily was assigned to another workgroup and did not have to work on Saturday, August 26 or Saturday, September 2.

On October 5, 2006, Burdette filed another internal EEO complaint. This complaint requested the removal of Malhotra from his position as her senior manager and her transfer to a specific area where she believed that the employees had Saturdays off. On October 15, 2006, upon completion of the investigation of Burdette's complaint against Malhotra, FedEx transferred Burdette to senior manager Mike Hardy's workgroup. Although Burdette enjoyed working under Hardy's supervision, Hardy required his Grade Level 26 operations managers to work on Saturdays. On October 18, 2006, Burdette received an interoffice memorandum from Hardy informing her that all managers were off on Mondays and her other day off was Wednesday.

On October 19, 2006, Burdette sent Hardy an email reminding him that it is against her religious practices to work on Saturdays. In response, Hardy gave her a memorandum entitled "Religious Accommodation" regarding her request not to work on Saturdays. The memorandum stated that FedEx could not grant the request and that Burdette was expected to report to work on Saturday, October, 21, 2006, and that failure to report could lead to discipline.

Burdette filed another EEO complaint on October 20, 2006, and did not report to work on October 21, 2006. On October 22, 2006, Burdette received a memorandum notifying her that she had been suspended with pay pending investigation of her absence. In the end, she was counseled for missing that day of work in lieu of discipline. Burdette did not work any Saturday in October of 2006.

- 4 -

On November 1, 2006, Hardy sent Burdette a memorandum titled "Religious Accommodation Decision (revised)." The memorandum detailed four options to accommodate Burdette's request to have Saturdays off: (1) move to night-side operations, which would require her to work Friday nights but would allow her to have weekends off; (2) go on a ninety-day unpaid personal leave of absence to look for a position within FedEx, which would permit her to have a schedule that accommodates her religious practices; (3) remain in her current position with Saturdays and Mondays as scheduled days off, but be required to work on one or both of her off days during peak season, inclement weather, staff shortages, or major exceptions in her operations; or (4) request severance pay and resign. The memorandum expressly requested Burdette to notify Hardy within forty-eight hours of her choice and stated that if Burdette did not notify him, option number three would be the default accommodation granted. Burdette signed the memorandum but did not inform Hardy of her choice.

Burdette was not required to work on any Saturday in November of 2006. On November 24, 2006, however, Hardy sent Burdette a memorandum titled "Religious Accommodation Agreement," which noted that FedEx had honored Burdette's request to have Saturday as her day off but, pursuant to the November 1, 2006, written agreement, Burdette was required to work on Saturdays during peak season. Accordingly, the memorandum requested Burdette to work December 9, 2006, and December 16, 2006—two Saturdays during peak season. The memorandum also stated that failure to report to work on those days would constitute a policy violation.

Burdette responded to the November 24, 2006, memorandum by reiterating to Hardy that she could not work on Saturdays. On December 5, 2006, Hardy sent Burdette a memorandum addressing

her ongoing refusal to work on Saturdays. In the memorandum, Hardy acknowledged Burdette's religious beliefs but, consistent with the November 24, 2006, memorandum, informed Burdette that failure to report to work on December 9, 2006, or December 16, 2006, would be a policy violation. The memorandum again offered Burdette the option of a severance package.

Next, Burdette went on approved FMLA leave beginning on December 9, 2006. During her leave, on December 11, 2006, she filed another EEO complaint, alleging religious discrimination and harassment. Burdette's doctor released her to return to work on December 19, 2006, but she did not return to work until December 20, 2006. Hardy immediately put her on investigative suspension for her absence, and the investigation resulted in Burdette's third notice of deficiency. Pursuant to its three-strikes policy, which requires termination of an employee who has three disciplinary actions within a twelve-month period, FedEx terminated Burdette on January 16, 2007.

## II. Analysis

We review a grant of summary judgment de novo. *Sullivan v. Or. Ford, Inc.*, 559 F.3d 594, 594 (6th Cir. 2009). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In addition, we view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006).

A.     Religious Discrimination and Hostile Work Environment

In her first cause of action, Burdette claims that FedEx discriminated against her on the basis

of her religion in violation of Title VII and the THRA. To assert a successful claim of religious discrimination under Title VII Burdette must present either direct evidence of discrimination or a prima facie case of indirect discrimination. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007). Burdette has offered no evidence of direct discrimination; thus, she must establish a prima facie case of indirect discrimination by showing that: (1) she was a member of a protected class; (2) she experienced an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of the protected class or that she was treated differently than similarly situated employees. *See id.* "The stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Thus, the analysis under the THRA and Title VII is the same. *Id.* Applying this analysis, the district court found that Burdette had failed to satisfy the fourth prong of the test: that she was treated differently than a similarly situated employee. Our review of the record leads to the same conclusion. No other FedEx employee, with the same position and seniority as Burdette, was permitted to have all Saturdays off. Similarly, she has offered no evidence that FedEx was willing to deviate from their three-strikes policy when employees had discipline issues similar to hers. Thus, she has not established a prima facie case.

Moreover, even if she could make out a prima facie case, Burdette has failed to demonstrate that FedEx's stated reasons for her termination were pretextual. *See Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) ("Pretext may be shown 'either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'") (quoting

*Tx. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)) (alteration in original). The record demonstrates that the three disciplinary actions taken against Burdette were based on her conduct and not on her religion or her requests not to work on Saturdays. Burdette counters that her third strike—her strike for not reporting to work on December 19, 2006 (a Tuesday)—is pretextual because her supervisor gave her permission to have the day off for a dermatological appointment. However, her supervisor, Hardy, testified in his deposition that he did not give her permission and that Burdette's sworn testimony is inconsistent with her contemporaneous explanation for her absence. On December 20, 2006, in her written explanation of why she missed work the previous day, Burdette did not claim that her supervisor excused her absence. Instead, she wrote simply that she had a dermatological appointment. Therefore, Burdette has no evidence supporting her testimony. Moreover, it seems unlikely that her supervisor would give her an entire day off in December, FedEx's peak season, for a dermatological appointment. Thus, Burdette's testimony alone is insufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c).

Although not specifically pleaded, Burdette also suggests that FedEx created a hostile work environment. In analyzing such a claim, a court must consider "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (quotation marks and citation omitted). Even assuming that Burdette's allegations are true, they do not rise to the level of discriminatory harassment. Rather, they are more appropriately categorized as "offhand comments" and "isolated incidents." *See id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)) (quotation marks

omitted).

B.     Religious Accommodation

Burdette next claims that FedEx failed to accommodate her religious beliefs, and, instead, disciplined and terminated her for her observance of the Sabbath. To succeed on her claim she must show that: (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she informed her employer about the conflicts; and (3) she was discharged or disciplined for failing to comply with the conflicting employment requirement. *Tepper*, 505 F.3d at 514. FedEx did not terminate her for not working on a Saturday. Further, we have observed, Burdette has failed to establish that her termination was not pursuant to FedEx's three-strikes policy. In addition, the law requires that an employee cooperate with an employer's attempts to accommodate. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). The record shows the opposite. Burdette insisted that she keep her current position and simply have all Saturdays off, but FedEx has presented evidence that such an arrangement would have created safety risks. Due to increased traffic during peak season, all managers needed to be available on all days of the week to assist in loading and launching aircraft. Allowing her not to work during this peak time would have created an undue hardship for FedEx—a hardship the law does not require FedEx to bear.

C.     FMLA

For her final cause of action, Burdette claims that FedEx interfered with her right to take FMLA leave. Her claim has no merit. The record shows that her FMLA leave began on December 9, 2006, and ended on December 18, 2006. FedEx issued Burdette her third strike for missing work on December 19, 2006. Although it is true that Burdette had a dermatological appointment on that

day, she has offered no evidence that the appointment was part of her FLMA leave. Further, she has offered no evidence that FedEx retaliated against her for taking FMLA leave. Thus, there is no genuine issue as to any material fact as to her FMLA claim.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.